[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the Town of Southington ("Town") against Commercial Union Insurance Company ("Commercial Union") to recover under the terms of a subdivision bond because subdivision improvements had not been completed. A trial to the court was held during a four day period from September 30, 1997 through October 7, 1997. The court, Allen, JTR, issued its memorandum of decision on January 22, 1998 finding for the Town in the amount of $175,000. Commercial Union appealed to the Appellate Court which reversed the trial court decision. On the granting of certification the Town appealed to the Supreme Court which reversed the Appellate Court on its finding and remanded the case to the Appellate Court to address the issues remaining on appeal. The Appellate Court CT Page 10162 remanded the case to the trial court to make factual findings and conclusions necessary for its review of whether the Town was precluded from calling the bond because it had become, in effect, a successor developer of the subdivision. Unfortunately, Judge Allen passed away between the time of her decision and this remand as a result of which the remand was assigned to this Court on July 10, 2001. This Court held an evidentiary hearing on July 10, 2001, and the Court received exhibits and heard testimony from two witnesses, John Weichsel, the Town manager of Southington and Michelle Stronz; the Economic Development Consultant to the Town of Southington.
The Court finds that the remand is limited to the following:
 1. Was the Town a successor developer and was it, therefore, precluded from calling the performance bond?
 2. Factual findings are to be provided as to the purpose and scope of the town's economic development of the subdivision.
 3. What were the time, place, manner and circumstances under which the Town purchased the subdivision?
 4. What were the Town's expenses and profits related to this subdivision?
The parties submitted a stipulation of facts dated July 10, 2001 which is attached hereto and made a part hereof. It does contain highlighting by the Court of certain parts of the stipulation and the addition of paragraph 13 with the permission of the parties as well as including in Paragraph 6 with the permission of the parties the acreage of each lot sold. The Court did grant the Town's Motion in Limine dated July 10, 2001 which essentially prohibits evidence that was not before the trial court but was for evidence occurring following the close of the trial of October 7, 1997. See Schedule C.
Based upon the totality of the evidence, this Court finds as follows:
 1. As per paragraph 12 of the stipulation the Town was a successor developer of the subdivision, successor to the original developer. As to whether the Town was, therefore, precluded from calling the performance bond, that appears to be a question of law best left to the Appellate Court. However, the trial court on page 8 of its memorandum of decision CT Page 10163 found that the Town was not precluded from calling the performance bond. The court stated in pertinent part as follows:
 "Commercial Union contends that the town's purchase of the property and the resale of its lots is relevant and/or material to the question of whether Commercial Union had an obligation to pay the town f or the cost of completing the improvements. The court disagrees. Contrary to defendant's argument the town was not legally obligated to require a successor developer' of the subdivision to complete the improvements. There was a contract between the town and Commercial Union, and the town was not required to release and discharge the compensated surety because the town bought the property."
This Court agrees with the conclusion of the trial court for the additional reason that the Town called the bond in a letter dated April 7, 1995 which is approximately two months and twenty days prior to the closing on the Town's purchase of the subdivision property which occurred on June 27, 1995. Although the letter stated, inter alia, "that if the matter was not resolved prior to October 1995 the town would have no choice but to call the bond", Judge Allen concluded that the bond had been called on April 7, 1995 because paragraph 11 of defendant's Answer dated April 5, 1996 states: "Commercial Union admits Southington sent a letter dated April 7, 1995, alleging improvements had not been completed and requested payment under the Bond." Judge Allen concluded that that was the calling of the bond. It should also be noted that Town Manager John Weichsel testified that the bond was called on April 7, 1995.
 2. As to the purpose and scope of the Town's economic development of the subdivision, this Court finds:
 a. Paragraph 8 of the stipulation states "The Town purchased the Property for purposes of economic development, according to the testimony at the trial by Michelle Stronz, Economic Development Consultant for the Town."
 b. Paragraph 10 of the stipulation states: "In purchasing the Property the Town was interested in helping small- to mid-size manufacturers grow their businesses in Southington."
 c. Paragraph 13 of the stipulation states: "The CT Page 10164 subdivision was for the purpose of industrial development".
 d. Town Manager Weichsel testified that the purchase was for economic development, not to make a profit but rather to jump start the local economy. The property is located in an enterprise zone and is zoned industrial. The Town intended to offer the land or lots at more modest figures than an ordinary developer would in order to stimulate sales.
 e. Michelle Stronz, the economic development consultant to the Town, testified in a similar manner to Town Manager Weichsel. She testified and the Court finds that the subdivision was in an enterprise zone, and she recommended purchase of it for economic, industrial development. The Town purchased ten of eleven lots, and hoped to sell them for industrial development and thereby widen the industrial tax base. This Court finds from these factual findings that the purpose and scope of the economic development of the subdivision was not to make a profit but rather to stimulate economic development, in particular industrial development, in the Town by purchasing the subdivision and attracting industry to build there.
 3. Based upon the testimony and exhibits the Court finds that shortly before May, 1995 the Town through its Town Manager and Economic Development Consultant and its Town Council became interested in obtaining the industrial subdivision known as The Captain Lewis Drive Industrial Subdivision for the purpose of economic development. Pratt Whitney, a large employer and a substantial tax payer had recently closed its doors in Southington, and the Town, through the officials named, believed that something must be done to jump start the economy and concluded that the purchase of the aforementioned subdivision which was presently dormant would facilitate this objective. The Town Manager had already set aside $60,000 for that purpose and by resolution of May 22, 1995, plaintiff's Exhibit 1, the Town authorized Michelle Stronz, Economic Development Consultant, to bid on and bind that parcel of land CT Page 10165 known as property no. 111 (which is The Captain Lewis Subdivision) and that she was further authorized to execute any necessary documents to complete the successful bid on the subject property. According to plaintiff's Exhibit 3 a resolution approving the "Project Plan for The Captain Lewis Industrial Park," the town council had appropriated $300,000 on June 12, 1995 for the acquisition of approximately 17.8 acres of land know as The Captain Lewis Industrial Park for municipal purposes which included the sale of lots for development as an industrial park. On June 6, 1995 the planning and zoning commission for the Town of Southington approved the Project Plan which is plaintiff's Exhibit 2. The Resolution Trust Company which had taken over Old Stone Federal Savings Bank had foreclosed on the aforementioned industrial subdivision and held an auction at 7:30 PM at the Sheraton Tara Hotel in Framingham, Massachusetts on June 13, 1995 at which Michelle Stronz was the successful bidder for the Town. The closing was held on June 27, 1995 at the town attorney's office in Southington in which the Resolution Trust Corporation sold the subject industrial subdivision to the Town for the sum of $352,450.
 4. As for the plaintiff's expenses and profits regarding this subdivision, the Court finds as follows:
 a. From the totality of the evidence the Court finds the purchase price as to each of the four lots sold by the Town between June 1995 and October 1997 and the expenses attributable to such sales and the profits therefrom to be in accordance with Schedule A attached hereto and made a part hereof.
 b. The profit shown totaling $54,738 was as of the end of testimony in the trial. The Court did not include future sales because they are speculative, and the Court did not include future expenses including an estimated expense for the road completion which was estimated by the Town's witnesses at the trial to be $310,000 although Judge Allen found it to be $175,000 because none of this money has been expended. The Town was relying upon the proceeds of Commercial Union's bond to pay for the unfinished improvements. CT Page 10166 Certainly the profit to date of $54,338 would not be sufficient to pay for the completion of the improvements. Further, by the time the subdivision is completed, if ever, there may be no profit on the entire subdivision or there may be a profit lower or higher than the profit to date. All of that is speculative. Although perhaps the following is beyond the remand, this Court believes that Commercial Union should pay the $175,000 judgment based upon its breach of contract as found by Judge Allen because the Town, as the developer, should not have to borrow money to complete the improvements. The Town insisted on the bond so that the Town would not have to pay for the improvements.
This Court has limited itself to the questions posed in the remand. If further evidence is desired by the Appellate Court, this Court will, of course, comply with any further remand that may be made.
Rittenband, JTR.